FILED _____ ENTERED
LODGED _____ RECEIVED

JUN 04 2012

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

THE HONORABLE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN SALAZAR HERNANDEZ and RICARDO MARTINEZ-PEREZ,<br><br>Defendants. | CASE NO. MJ12-293<br><br>COMPLAINT for VIOLATION |

BEFORE, The Honorable Brian A. Tsuchida, United States Magistrate Judge, Seattle, Washington.

**COUNT I**
**(Distribution of Methamphetamine)**

On or about January 26, 2012, in King County, within the Western District of Washington, and elsewhere, JUAN SALAZAR HERNANDEZ knowingly and intentionally did distribute methamphetamine, a substance controlled under Schedule II, Title 21, United States Code, Section 812.

The Grand Jury further alleges that this offense involved fifty (50) grams or more of actual methamphetamine, its salts, isomers, and salts of its isomers.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

## COUNT II
### (Alien in Possession of a Firearm)

On or about November 23, 2011, in King County, within the Western District of Washington, and elsewhere, JUAN SALAZAR HERNANDEZ, then being an alien illegally and unlawfully in the United States, possessed in and affecting interstate commerce, a firearm, that is, a Kel-Tec, model PF-9, 9mm handgun, serial number RUS81, which had been shipped and transported in interstate commerce.

All in violation of Title 18, United States Code, Sections 922(g)(5) and 924(a)(2).

## COUNT III
### (Felon in Possession of a Firearm)

On or about November 23, 2011, in King County, within the Western District of Washington, RICARDO MARTINEZ-PEREZ, having been convicted of a felony on or about May 12, 2010, to wit, the Unlawful Possession of a Firearm in the Second Degree, in the Superior Court for the State of Washington in King County, cause number 10-C-02749-8KNT, did knowingly possess in and affecting commerce a firearm, that is, a SKS, 7.62mm semi-assault rifle, serial number 2301102, which had been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Sections 922(g) and 924(a)(2).

The undersigned complainant being duly sworn states:

1. I am a Special Agent ("SA") with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in Seattle, Washington. I have been employed as an ATF Special Agent since August 15, 2008, and am responsible for enforcing violations of federal firearms and narcotics laws. I have completed the Criminal Investigator Training Program and the ATF Special Agent Basic Training Academy taught at the Federal Law Enforcement Training Center located in Glynco, Georgia, and I have previous training and experience as a Detroit Police Officer. I have served in the United States Army, and I received a Bachelor of Science Degree in Public Safety Administration from Eastern Michigan University in Ypsilanti, Michigan.

2. The information in this affidavit is based on my direct knowledge and on information provided to me by other law enforcement sources. This affidavit does not include everything I learned during the investigation, but rather only includes enough information to show probable cause.

3. The ATF became involved in this investigation at the request of the Immigration and Customs Enforcement Homeland Security Investigations ("HSI"). HSI contacted ATF and reported that they been investigating Juan Salazar-Hernandez for violations of federal law. This investigation involved controlled buys of narcotics and firearms. The buys were made by an undercover agent and a Confidential Informant. I will refer the undercover agent as "UC", and I will refer the Confidential Informant as "CI." I will refer to both the UC and CI as men regardless of their real gender.

4. It is my understanding based on information learned from HSI agents that the CI in this investigation has been providing information to HSI Blaine, Washington regarding drug traffickers operating in King, Skagit and Whatcom counties in Washington State. It is my understanding that the CI has a 2008 felony conviction for the distribution of methamphetamine. The CI has consistently provided timely and accurate information in multiple investigations resulting in more than fifteen arrests, seizure of methamphetamine and heroin, the recovery of multiple firearms and the seizure of drug proceeds. In this investigation, the CI's information has been corroborated through recorded telephone calls, law enforcement surveillance, undercover agent and other witness information. The CI is currently assisting HSI for immigration benefits.

5. The CI began providing information to HSI Blaine, Washington regarding drug traffickers operating in King, Skagit and Whatcom counties in Washington State. The CI has consistently provided timely and accurate information in multiple investigations resulting in more than fifteen arrests, seizure of methamphetamine and heroin, the recovery of multiple firearms and the seizure of drug proceeds. In this investigation, the CI's information has been corroborated through recorded telephone calls, law enforcement surveillance and other witness information. The CI is currently assisting HSI for

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

immigration benefits.

6. I have been informed by HSI agents that Juan Salazar-Hernandez is a Mexican national in the United States without permission from the United States government.

7. I have reviewed a criminal history report for Ricardo Martinez-Perez. Martinez-Perez has a May 12, 2010, felony conviction for Unlawful Possession of a Firearm in the Second Degree in Washington State Superior Court in King County, cause number 10-C-02749-8KNT.

**The November 23, 2011, Controlled Buy of Firearms From Martinez-Perez and Salazar-Hernandez.**

8. On November 23, 2011, agents conducted an undercover buy of two firearms from Juan Salazar-Hernandez and Ricardo Martinez-Perez. On that day, at 11:21 a.m., UC and CI placed a phone call to arrange for the purchase of an AK-47 rifle and 9mm handgun from Salazar-Hernandez. During this call, Salazar-Hernandez told the CI to meet him at his friend's house located at 504 K Street SE, Auburn, Washington. Salazar-Hernandez told the CI and UC that he was currently at the 504 K Street house and was in possession of both firearms and ready to sell them. Later, a computer records search identified the 504 K Street address as a residence for Martinez-Perez.

9. At 12:06 p.m., UC spoke with Salazar-Hernandez over the phone. Salazar-Hernandez agreed to meet the UC and CI at a Burger King parking lot located at 320 Auburn Way S. Auburn, Washington at approximately 12:35p.m.

10. At 12:54 p.m., the UC and CI met with Salazar-Hernandez and Martinez-Perez (who UC later identified from a booking photo) at the Burger King parking lot. Surveillance officers had observed Salazar-Hernandez and Martinez-Perez arrive on foot from the direction of the 504 K Street house. The UC introduced himself to Salazar-Hernandez and Salazar-Hernandez identified himself as "Juan." The UC subsequently identified both Salazar-Hernandez from a Washington State Driver's license photo and Martinez-Perez from a booking photo.

11. The UC walked around to the trunk of his vehicle with Salazar-Hernandez and

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Martinez-Perez. The UC opened the trunk of the vehicle and Salazar-Hernandez placed a Kel-Tec 9mm handgun in the trunk of UC's vehicle. The UC paid Salazar-Hernandez $700 for the handgun.

12. The UC asked Salazar-Hernandez and Martinez-Perez about the AK-47 rifle. Salazar-Hernandez and Martinez-Perez explained to the UC that they did not bring the AK-47 because it was too large to carry. Salazar-Hernandez and Martinez-Perez suggested to the UC that he drive to a nearby house to pick up the rifle but the UC refused to do so. Salazar-Hernandez and Martinez-Perez eventually agreed to retrieve the AK-47 and bring it to the Burger King parking lot. At 12:56 p.m., Salazar-Hernandez and Martinez-Perez departed the area to retrieve the AK-47 rifle. Surveillance officers observed Salazar-Hernandez and Martinez-Perez depart the area and walk in the direction of the 504 K Street house. The UC and CI waited at the Burger King parking lot.

13. At 1:13 p.m., Salazar-Hernandez and Martinez-Perez arrived back at the Burger King parking lot in a brown Chevrolet Tahoe bearing Washington license plate 209KXC. The UC observed Martinez-Perez driving the vehicle and Salazar-Hernandez in the passenger seat. Martinez-Perez contacted and greeted the UC. Martinez-Perez then showed the UC a rifle case that was in the back seat of the vehicle. Martinez-Perez opened the rifle case and showed the UC the SKS 7.62mm rifle (an SKS rifle is similar in appearance to an AK-47 and commonly mistaken for one). Salazar-Hernandez, who remained in the passenger seat handed the UC an ammunition magazine for the rifle. The UC paid Martinez-Perez $800 for the rifle. A later vehicle records check showed the brown Chevrolet Tahoe registered with an address of 504 K Street SE, Auburn Washington.

14. ATF Special Agent Heidi Wallace, who is a certified interstate nexus expert in the fields of firearms and ammunition, has determined that the firearms, to wit: a SKS 7.62mm rifle; and a Kel-Tec 9mm handgun, were not manufactured in the state of Washington. As a result, the firearms must have been shipped or transported in interstate or foreign commerce. SA Wallace confirms that each weapon met the definition of a firearm under

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 | federal law, as each is designed expel a projectile by means of an explosion.

**The January 26, 2012, Controlled Buy of Methamphetamine From Salazar-Hernandez.**

15. On January 26, 2012, CI conducted a controlled buy of crystal methamphetamine from Juan Salazar-Hernandez. Salazar-Hernandez arranged the deal by calling the CI and agreeing to sell CI four ounces of methamphetamine for $1200 per ounce.

16. On January 26, 2012, at 7:00 a.m., surveillance officers observed the CI meet with Salazar-Hernandez at a Burger King located at 1520 Supermall Way in Auburn, Washington.

17. Surveillance officers observed Salazar-Hernandez meet the CI inside the Burger King and observed Salazar-Hernandez counting money at the table while meeting with the CI. Salazar-Hernandez gave the CI two baggies containing methamphetamine in exchange for $4800. Surveillance officers observed the CI and Salazar-Hernandez during the entire transaction. Agents took possession of the purchased methamphetamine at the conclusion of the transaction and the substance field tested positive for methamphetamine.

18. The Drug Enforcement Administration (DEA) Western Laboratory conducted an analysis of the purchased methamphetamine. The net weight of the methamphetamine was 89 grams with a 86.3% purity level.

19. Based on the foregoing, I respectfully submit that there is probable cause to believe that Juan Salazar-Hernandez and/or Ricardo Martinez-Perez committed the crimes

//
//
//

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

described above, and as set forth in Counts 1, 2 and 3 above, incorporated herein by reference.

_____
ALEXANDER LIWIENSKI, Complainant
Special Agent, ATF


Based on the Complaint and Affidavit sworn to before me and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendant committed the offense set forth in the Complaint.

Date this 4 day of June, 2012.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970